## Case No. 3,585.
### DAUSMAN & DRUMMOND TOBACCO CO. v. RUFFNER et al.
[15 O. G. 559.]

Circuit Court, N. D. Illinois. July 8, 1878.

#### TRADE MARK—INFRINGEMENT.

1. A registered trade-mark for plug-tobacco, consisting of one longitudinal line dividing the plug into equal parts and a series of transverse lines crossing the plug at right angles with the longitudinal line, and at equal distances from each other, will not prevent the use of a trade-mark for tobacco, consisting of a series of seven Greek crosses stamped on the center of the surface of the plug at equal distances from each other and a series of half crosses on the margin opposite the full crosses, as guides for cutting the plug into pieces.

2. Every manufacturer has the right to indicate points or lines of division by marks upon his goods or packages.

BLODGETT, District Judge. Complainant in this case seeks to enjoin defendants from using a trade-mark adopted by complainant, and registered in pursuance of the act of congress, to designate an article of plug chewing-tobacco manufactured by complainant. The complainant's proofs tend to show that it adopted the trade-mark in question in June or July, 1877, and applied it to designate a peculiar and superior quality of plug-tobacco; and on the 25th of August application was made to register said trade-mark, which registration was allowed and completed on the 20th of November. The trade-mark claimed is described in complainant's specification in the following terms: "Said trade-mark consists of a series of lines or indentations arranged in a specific manner

upon the plug-tobacco manufactured by us. The lines composing the peculiar mark consist in one longitudinal line, extending the length of the plug, and dividing it into two equal parts, and a series of transverse lines running across the plug at right angles to the longitudinal line, arranged at equal distances from each other and dividing the plug into equal parts, transversely of the lump, as shown in the accompanying fac-simile." No letters or name are combined with said lines to make the trade-mark claimed, but complainant alleges that soon after this style of plug was brought out and placed upon the market it received the designation from and is now known in the trade as "Cross-Bar Tobacco." The mark used by the defendants to designate their tobacco is also registered pursuant to the act of congress, and consists of a series of seven Greek crosses stamped or impressed upon the center of the surface of the plug at equal distances apart, and a series of half crosses on the margin of the plug opposite each of the full crosses, "which lines are so stamped upon said tobacco as guides for cutting or dividing the plug into pieces of one ounce each." Much proof has been offered on the part of the defendants to show that complainant was not the first to adopt and use longitudinal and transverse lines upon manufactured goods for the purpose of indicating the measured or equal portions into which the piece could be cut or separated, but I do not deem it necessary to analyze or consider all this testimony, from the view I take of the case. A mere ocular examination of the tobacco-plugs manufactured by complainant and defendants clearly shows that both parties have adopted their respective lines or marks for one purpose, and that is to enable the retailer to cut measured quantities from the plug. The defendants honestly and frankly admit that such is the purpose for which they placed their lines upon their plug-tobacco, namely, to enable the retailer to cut off the tobacco in ounce lumps or pieces. The complainants evidently intend to accomplish the same purpose, although they do not say so in their specifications, because they provide for running the longitudinal line through the center of the plug, and the cross lines at equal distances from each other transversely across the plug, so as to divide it into equal parts. One of the principles running through the law of trade-marks is that there need be no utility attached to the trade-mark itself,—that is, it shall have no useful purpose in connection with the goods, further than to show the origin or manufacture. But in this case there is evidently a purpose in these lines by both parties, and that is to designate the manner in which the plug can be cut up for the purpose of retail, and the complainants in their specification say: "The number of transverse lines may be varied slightly, according to the size of the plug, without

materially modifying our trade-mark, the general nature of which is a single longitudinal line running along the middle of the plug, with a series of transverse lines at equal distances from each other and crossing the longitudinal line at right angles." Now they may vary, of course, the number of cross lines and their distances apart by the thickness of the plug. Having the plug thicker or thinner, the transverse lines might be farther apart or closer together, as may be required, in order to make the requisite quantity in each of these measured parts.

And the question is, can the complainant, by registering these longitudinal and transverse lines as a trade-mark to designate its plug-tobacco, prevent other manufacturers of plug-tobacco from so making their plugs as to enable the retailer to cut it off in equal or measured quantities? And I am of opinion that complainant's trade-mark cannot be so construed or applied as to prevent defendants from indicating by mark or lines upon their plugs the point at which to cut off equal or measured quantities. Any manufacturer of goods which are sold by the piece, such as cloths, for instance, must have the right, by marks or lines, to indicate where to cut, in order to remove each yard or part of a yard, or other specific quantity. So, in regard to liquids put up, for instance, in glass bottles or similar packages, lines might be drawn, showing the half or other portion of the contents of the package, so as to enable a consumer or retailer to withdraw measured parts, and no manufacturer by registering a trade-mark upon a package of that kind could prevent another manufacturer from thus showing how a measured portion of the contents of his package might be withdrawn. The defendants' mark is not precisely like the complainant's, and it is obvious the patent office was of the opinion that both were allowable as applied to the same class of goods, for almost contemporaneously with the registry of complainant's trade-mark the patent office allowed the defendants to register their trade-mark; and, in fact, the registration of the defendants' mark was completed and the certificate issued before that of complainant's, so that it is clear the patent office took the view that one of these did not infringe upon the other. The defendants' tobacco is known to the trade by another name or designation from that of the complainant. It is known and put upon the market as "Army and Navy Plug-Tobacco," instead of "Cross-Bar Tobacco." It was admitted by the complainant's counsel upon the argument that the complainant's trade-mark could not and should not be so construed as to prevent the defendants from marking their tobacco in some manner so as to indicate where to cut in order to remove a certain measured quantity, and it seems to me that in making this admission they practically admit away the case, as against these defendants. The Greek

cross, although it is the equivalent in every respect, so far as practical use is concerned, of the complainant's lines in its plug, yet, at the same time, as one has the right to show where to cut, so the other has, and my conclusion is that one manufacturer cannot, by registering straight lines intersecting each other as these do, prevent another from indicating to the consumers of his goods where they must cut for certain quantities. The motion for the injunction is, therefore, overruled.